IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ADI LIQUIDATION, INC., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 14-12092 (KJC) |
| Debtors. | : | (Jointly Administered) |

| | | |
|---|---|---|
| BIMBO BAKERIES USA, INC., | : | |
| | : | Civ. No. 17-903-CFC |
| Appellant, | : | |
| v. | : | |
| | : | |
| AW LIQUIDATION, INC., | : | |
| | : | |
| Appellee. | : | |

John Daniel McLaughlin, Jr., CIARDI CIARDI & ASTIN, Wilmington, Delaware; Geraldine E. Ponto, Tatiana Markel, BAKER & HOSTETLER LLP, New York, New York

*Counsel for Appellant*

David B. Stratton, Evelyn J. Meltzer, PEPPER HAMILTON LLP, Wilmington, Delaware

*Counsel for Appellee*

**MEMORANDUM OPINION**

January 16, 2019
Wilmington, Delaware

                                    _[signature]_
                    CONNOLLY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Appellant-creditor Bimbo Bakeries USA, Inc. ("BBU") has appealed the June 22, 2017 Opinion and Order of the United States Bankruptcy Court for the District of Delaware, *In re ADI Liquidation, Inc.*, 572 B.R. 543 (Bankr. D. Del. 2017) ("Decision"), granting in part the summary judgment motion filed by debtor AW Liquidation, Inc. ("AWI") with respect to BBU's Motion for the Allowance and Payment of Administrative Expense Under 11 U.S.C. § 503(b)(9) ("Administrative Expense Motion"). (JA 1-22).[1] For the reasons set forth herein, the Court affirms the Decision.

## II. BACKGROUND

AWI was a cooperative food distributor that provided distribution and retail services to member retailers. BBU is a manufacturer and distributor of freshly baked goods. One of the retail services AWI provided was a "Bill Thru program," whereby AWI performed broker-type services by arranging for certain AWI members ("AWI Customers") to purchase goods directly from certain suppliers, such as BBU. Under this arrangement, AWI Customers would order goods from BBU, and BBU would deliver the goods directly to the AWI Customers. (JA810).

---

[1] The parties' Joint Appendix (D.I. 11) is cited herein as "JA__."

In managing the Bill Thru Program, AWI would negotiate and oversee "pricing, incentive programs, account maintenance, product promotions, customer complaints or concerns, and ... vendor deals with BBU." (JA25-26 ¶ 13). As compensation for these efforts, AWI retained a 2% fee from the payments it collected from AWI Customers to remit to BBU for BBU's deliveries to AWI Customers. (*Id.*)

On September 9, 2014 (the "Petition Date"), AWI and its affiliated debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Thereafter, BBU filed Proof of Claim No. 263 (the "Administrative Claim"), alleging an administrative priority claim pursuant to § 503(b)(9) of the Bankruptcy Code in the amount of $916,452.48[2] for goods it delivered to AWI Customers within 20 days of the Petition Date. BBU attached to its Administrative Claim a spreadsheet identifying "customer names" to which BBU delivered its goods. (JA35-436). Every "customer name" listed in the spreadsheet is an AWI Customer. AWI is not identified on the customer spreadsheet. (*Id.*)

Section 503(b)(9) provides that, after notice and a hearing, the bankruptcy court shall allow, as an administrative expense, "the value of any goods received

---

[2] The claim was filed in the amount of $962,537.87, but the parties agree that only $916,452.48 is at issue in this appeal, as BBU does not appeal from the Bankruptcy Court's partial denial of summary judgment with respect to $46,085.39 of goods delivered to Debtor NK Liquidation, Inc. (f/k/a Vida Nell's, Inc.), a subsidiary of AWI. (JA1384-85).

2

by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of the debtor's business." 11 U.S.C. § 503(b)(9). Administrative expenses receive priority over other unsecured claims pursuant to § 507(a)(2). To receive such priority, a creditor must demonstrate that: (1) the goods in question were received by the debtor within 20 days before the petition date, (2) the goods were sold to the debtor, and (3) the goods were sold in the ordinary course of business. 11 U.S.C. § 503(b)(9).

On February 5, 2016, BBU filed its Administrative Expense Motion, seeking allowance and payment of the Administrative Claim. (JA1-22). In support of its motion, BBU filed the Declaration of Basil Klipa (the "Klipa Declaration"), in which Mr. Klipa, BBU's manager for its account with AWI and AWI Customers, described the mechanics of the Bill Thru Program. (JA25-27). Mr. Klipa averred in his declaration that AWI was the "representative of the AWI Customers" in AWI's dealings with BBU. BBU similarly asserted in its motion that "AWI was the AWI Customers' representative with BBU." (JA4).

AWI filed an objection to the Administrative Expense Motion, arguing that AWI never received—physically or constructively—the goods sent by BBU to AWI Customers and that, therefore, BBU's Administrative Expense Claim did not meet the requirements of § 503(b)(9) and should be reclassified as a general

3

unsecured claim. (JA638-806). In a reply memorandum filed in further support of its Administrative Expense Motion, BBU argued that the AWI Customers' physical receipt of the goods in question constituted constructive receipt by AWI because of the integral role that AWI played in the cooperative and in AWI Customer operations. (JA25-26 ¶¶ 13-14).

On July 8, 2016, AWI filed its summary judgment motion, arguing that BBU had not, and could not, provide sufficient facts to support conclusions that AWI had received goods or that BBU had sold AWI goods, as required for administrative priority under § 503(b)(9). BBU chose not to submit in response to the summary judgment motion an affidavit or declaration pursuant to Federal Rule of Civil Procedure 56(d) "to show . . . for specified reasons, [that] it [could] not present facts essential to justify its opposition" to the motion. (*See* JA1012). Instead, BBU argued that the facts set forth in the Klipa Declaration and the existence of 64 purchase and supply agreements ("PSAs") between AWI and AWI Customers created material issues of disputed fact. (JA1000, 1016).

On October 25, 2016, the Bankruptcy Court heard oral argument on the Summary Judgment Motion. (JA1415-57). On June 22, 2017, the Bankruptcy Court issued its Decision. The Bankruptcy Court held that AWI was entitled to summary judgment because there were no material facts in dispute and AWI had demonstrated that BBU was unable as a matter of law to show that it had received

4

goods, as required by § 503(b)(9). 572 B.R. at 550. The Bankruptcy Court also noted that AWI had "ma[d]e a strong argument that the second section 503(b)(9) element—requiring that the goods were sold to AWI—ha[d] also not been satisfied[,]" and that the facts asserted by BBU in support of its Administrative Expense Motion "indicate[d] that the goods were sold to and received by the AWI Customers, not AWI." *Id.*

On July 5, 2017, BBU filed a timely notice of appeal. The appeal is fully briefed. (D.I. 10, 12, 13). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the Court's decisional process would not be aided by oral argument.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal from the Bankruptcy Court under 28 U.S.C. § 158. In reviewing the Bankruptcy Court's Order granting AWI summary judgment, the Court applies a plenary, or *de novo*, standard of review. *In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Upon *de novo* review, the Court must determine whether AWI satisfied its burden of proving that there was "no genuine dispute as to any material fact" and that it was "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "All reasonable inferences from the record

must be drawn in favor of the nonmoving party." *MBIA Inc. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## IV. ANALYSIS

On appeal BBU asserts that: (i) the Bankruptcy Court erred in finding that AWI had not constructively received the goods in question; (ii) the Bankruptcy Court erred in finding that BBU did not sell the goods to AWI; (iii) the Bankruptcy Court erred in granting summary judgment to AWI on the limited record before it; and (iv) the Decision results in an injustice to BBU. (D.I. 10 at 7). The Court addresses these arguments in turn.

### A. Goods "Received" by the Debtor

After the Bankruptcy Court issued its Decision, and consistent with the Decision, the Third Circuit held in *In re World Imports, Ltd.*, 862 F.3d 338, 346 (3d Cir. 2017) that "receipt as used in 11 U.S.C. § 503(b)(9) requires physical

6

possession by the buyer or his agent." Assuming *arguendo* that AWI (as opposed to each AWI Customer) was the buyer of the goods in question, it is undisputed that AWI did not take actual physical possession of the goods shipped by BBU directly to the AWI Customers. It is also undisputed that AWI was the agent of the AWI Customers, not *vice versa*. BBU asserted in its Administrative Expense motion that "AWI was the AWI Customers' representative with BBU," JA4; and BBU's affiant, Mr. Klipa, similarly described AWI as the "representative of the AWI Customers" when AWI communicated with BBU. Because it is undisputed that AWI did not physically possess the goods in question and that the AWI customers were not AWI's agents,[3] the Bankruptcy Court did not err in holding that BBU could not establish that AWI constructively received the goods delivered to the AWI Customers. Because that ruling was not erroneous, summary judgment was properly entered in AWI's favor. *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (holding that if the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an

---

[3] *See Representative*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Someone who stands for or acts on behalf of another. . . . See AGENT.").

essential element of the nonmoving party's case necessarily renders all other facts immaterial") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### B. Sale of Goods to AWI

The Court rejects BBU's argument that "the Bankruptcy Court erred in granting summary judgment to AWI by finding that BBU did not sell the goods to AWI" (D.I. 10 at 7) for three reasons. First, the Bankruptcy Court did not grant summary judgment "by finding that BBU did not sell the goods to AWI." Although the Bankruptcy Court noted that AWI's argument that BBU did not sell it the goods question was a "strong argument," the court's holding was based on its conclusion that AWI did not receive the goods delivered to the AWI Customers. *See* 572 B.R. at 550 ("However, despite to whom the goods were sold, BBU cannot, as a matter of law satisfy the requirement that AWI must have 'received' the goods"); *id.* at 548 ("The key issue to be considered here is whether AWI 'received' goods from BBU within the meaning of section 503(b)(9)"); *id.* at 550 ("Because AWI did not take actual or constructive possession of the goods at issue, BBU is not entitled to an administrative priority claim under section 503(b)(9)[.]").

Second, because BBU had the burden of persuasion to establish all three of § 503(b)(9)'s requirements, to prevail on summary judgment, AWI needed only to demonstrate that BBU could not satisfy any one of those requirements. Thus, the

8

Bankruptcy Court's ruling that BBU could not establish the "receipt" requirement of § 503(b)(9) was dispositive.

Third, the Bankruptcy Court did not err in finding that the undisputed facts presented to it "reveal[ed] that . . . the sales [of the goods] were made to third parties, not to AWI." *Id.* As the Bankruptcy Court noted, BBU's own affiant, Mr. Klipa, described the sales as being made to the AWI Customers. Specifically, Mr. Klipa averred that:

- "AWI paid [BBU] the value of the *goods delivered to AWI Customers*;"
- "AWI fixed the payment terms *for sales to the AWI Customers*;"
- "[BBU] billed AWI weekly for *all sales to the AWI Customers*;"
- BBU describes these sales as "transactions between [BBU] and the AWI Customers;" and
- "AWI was responsible for negotiating promotions for [BBU's] products *sold to the AWI Customers*."

*Id.* (citing JA25-27 ¶¶ 12, 13, 18 (emphasis added)). Contrary to BBU's arguments on appeal, the PSAs it submitted in support of its opposition to AWI's summary judgment motion do not contradict or undermine Mr. Klipa's declaration or the Bankruptcy Court's finding that BBU sold the goods in question to the AWI Customers, not AWI. BBU was not a party to the PSAs, and BBU offered no evidence that its deliveries of goods to the AWI Customers were covered by the PSAs. Indeed, at oral argument before the Bankruptcy Court, BBU's counsel conceded that she could not represent to the court that the PSA's "govern[ed] [ ]

9

BBU's goods." (JA1443). Thus, even if the Bankruptcy Court had based its summary judgment ruling on a determination that BBU could not establish as a matter of law that it sold the goods to AWI, such a ruling would not have been erroneous.

## C. Insufficient Factual Record

The Court also rejects BBU's argument that summary judgment was premature because BBU needed discovery to explore the relationship between AWI and AWI Customers. (*See* D.I. 10 at 2). Courts are obliged to give a party that opposes summary judgment an adequate opportunity to obtain discovery. *Celotex*, 477 U.S. at 322. If, however, a party opposing summary judgment believes it needs additional time for discovery, it must follow the procedures required by Rule 56(d). *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988).

Rule 56(d) provides:

> When Facts are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). The Third Circuit has interpreted Rule 56(d) as requiring "a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought;

10

how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling*, 855 F.2d at 139-40.

In this case, BBU made a conscious decision not to file a Rule 56(d) affidavit. It informed the Bankruptcy Court of that decision in its opposition to AWI's summary judgment motion, *see* JA1012, and again at oral argument, *see* JA1440 ("[y]our Honor, I'm not asking that the Court defer this and I'm not saying that the record before the Court should be expanded for Your Honor to decide this motion"). Having made and confirmed that choice in the Bankruptcy Court, BBU is estopped from arguing on appeal that it needed to conduct more discovery to develop a full factual record. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 214 (3d Cir. 2017) (noting that, except in rare cases, "failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal.")

### D. Equitable Argument

Finally, BBU invokes an equitable argument that § 503(b)(9) as interpreted by the Third Circuit in *In re World Imports* is unfair to creditors that operate as BBU did in this case and results in injustice. (D.I. 10 at 19-20). According to BBU, the Third Circuit advises that courts should "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Friedman's Liquidating Trust v. Roth Staffing Cos. LP (In re Friedman's Inc.)*, 738 F.3d 547, 554 (3d Cir. 2013) (quoting *Kelly v.*

11

*Robinson*, 479 U.S. 36, 43 (1986)). BBU argues that § 503(b)(9) was enacted with two objectives in mind: first, "to encourage trade creditors to continue to extend credit to a debtor potentially heading for bankruptcy;" and, second, to "discourage abuse by debtors who seek to acquire goods at a time when it is known that bankruptcy is imminent and that payment for the goods will not have to be tendered." (D.I. 10 at 19 (citing *In re Arts Dairy, LLC*, 414 B.R. 219, 220 (Bankr. N.D. Ohio 2009)). BBU argues that "AWI subverted the second goal of § 503(b)(9) by continuing business as usual with BBU in the weeks leading to AWI's bankruptcy, knowing it was filing for chapter 11 protection, selling its assets, and then liquidating, and having no intention of honoring BBU's administrative priority for the twenty-day goods that BBU delivered to AWI Customers." (*Id.* at 20).

AWI denies that it acted in bad faith during the Chapter 11 cases and that, in any event, BBU's equity argument is irrelevant, as the granting of administrative expense priority is not a matter of equity. (*See* D.I. 12 at 27). The Court agrees. Although the Court is "mindful that the Bankruptcy Code aims, in the main, to secure equal distribution among creditors," it must "take into account, as well, the complementary principle that preferential treatment of a class of creditors is in order [ ] when clearly authorized by Congress." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) (citations omitted). Congress spoke

clearly when it gave certain creditors preferential treatment under § 503(b)(9). As BBU failed to satisfy the requirements of § 503(b)(9), it cannot receive the preferences secured by the statute. Moreover, as AWI points out, the general unsecured creditors of AWI are projected to receive 9.2% to 24.2% of their general unsecured claims, while allowed administrative priority claimants are paid in full. (*See* JA1802). To give BBU an administrative priority claim when it does not meet the requirements set forth in the Bankruptcy Code would be unfair to the general unsecured creditors, as those creditors' recoveries would necessarily be reduced if BBU were allowed full payment of its asserted claim. Thus, BBU's equitable arguments are unavailing.

## V. CONCLUSION

BBU cannot satisfy the requirements for administrative priority under § 503(b)(9) as a matter of law because AWI did not receive—either physically or constructively—the goods in question. Because there was no genuine issue for trial, the Court finds no error in the Bankruptcy Court's partial grant of summary judgment in AWI's favor with respect to the goods delivered to AWI Customers, and will affirm the Decision.

The Court will issue a separate Order consistent with this Memorandum Opinion.